PEOPLE v GARVIE

Docket No. 78011. Submitted June 19, 1985, at Lansing.—Decided
January 22, 1986. Leave to appeal applied for.

Rickey G. Garvie was convicted of first-degree criminal sexual
conduct by a jury in Eaton Circuit Court and sentenced to life
imprisonment, Richard M. Shuster, J. Defendant appealed.
*Held:*

1. The trial court did not err in applying the rape-shield law
to prohibit defendant from placing before the jury evidence of
the victim's accusation that another person had also assaulted
him previously where defendant's efforts to characterize the
accusation as false would have been futile. Defendant did not
lay an adequate foundation for admission of the evidence.

2. The trial court correctly exercised its discretion in admit-
ting evidence of numerous uncharged acts of sodomy by defen-
dant against the victim. The admission of that evidence did not
deny defendant a fair trial.

3. The trial court did not abuse its discretion by permitting
the victim, a seven-year-old boy, to be shown two anatomically
correct dolls to demonstrate the sexual offense with which
defendant was charged.

4. Defendant's argument that the trial court erred in finding
that the victim's examining physician and another witness
were not res gestae witnesses was not preserved for appellate

REFERENCES

Am Jur 2d, Criminal Law § 599.
Am Jur 2d, Evidence, § 805.
Am Jur 2d, Rape §§ 70-75, 87, 101.
Am Jur 2d, Witnesses § 74.
Admissibility, in rape cases, of evidence that accused raped or
   attempted to rape person other than prosecutrix. 2 ALR4th 330.
Constitutionality of "rape shield" statute restricting use of evidence
   of victim's sexual experiences. 1 ALR4th 283.
Modern status of admissibility, in statutory rape prosecution, of
   complainant's prior sexual acts or general reputation for unchas-
   tity. 90 ALR3d 1300.
Propriety, in trial of criminal case, of use of skeleton or model of
   human body or part. 83 ALR2d 1097.

review by timely objection. No manifest injustice to defendant will occur by failure to address the merits of this issue.

5. Defendant's contention that the trial court erred in allowing a doctor who had not examined the victim to testify on rebuttal is without merit. The rebuttal was appropriate.

6. Defendant failed to preserve for appeal his claim that the sentencing court improperly relied on convictions which occurred while he was without counsel in determining his sentence, but defendant is entitled to resentencing because the court did not indicate its belief on the merits of defendant's objection to the use of his juvenile record.

7. Defendant's conviction is affirmed but his sentence is set aside and the case is remanded to the trial court for response by the court to defendant's objection and for subsequent resentencing.

Affirmed in part and remanded.

1. RAPE — CRIMINAL SEXUAL CONDUCT — EVIDENCE OF PRIOR SEXUAL CONDUCT.

Admission of evidence of a rape victim's sexual history may be required where offered to preserve the defendant's right to confrontation, such as to show prior false accusations of rape made by the victim, but the rape-shield law is properly applied to prohibit a defendant from using evidence of his alleged victim's accusations that another person had also assaulted him in the past where the defendant's efforts to characterize the accusations as false would have been futile (MCL 750.520[j][1]; MSA 28.788[10][1]).

2. RAPE — CRIMINAL SEXUAL CONDUCT — EVIDENCE — ANATOMICALLY CORRECT DOLLS.

It is within a trial court's discretion to determine whether the use of two anatomically correct dolls by a seven-year-old sodomy victim to demonstrate the sexual offense would be prejudicial to the defendant.

3. CRIMINAL LAW — WITNESSES — ENDORSEMENT OF WITNESSES — WAIVER — APPEAL.

A defendant who fails to make a timely motion for the endorsement and production of witnesses, even though aware of their identity prior to trial, waives any right to the witnesses' presence at trial.

4. CRIMINAL LAW — SENTENCING.

It is proper for a court when determining a sentence for a defendant to consider factors other than those raised at trial,

such as information as to the defendant's criminal conduct and his life and character.

5. CRIMINAL LAW — SENTENCING — PRESENTENCE REPORTS — COURT RULES.

   A sentencing court's duty to respond to a defendant's allegation of inaccuracy in the information provided to the court at sentencing involves something more than acknowledging that it has heard the defendant's claims regarding the information; the court must indicate, in exercising its discretion regarding such a determination, whether it believes those claims have merit.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *G. Michael Hocking*, Prosecuting Attorney, and *K. Davison Hunter*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Derrick A. Carter*), for defendant on appeal.

Before: ALLEN, P.J., and WAHLS and J. P. O'BRIEN,* JJ.

PER CURIAM. Defendant was convicted as charged of first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2). Sentenced to life imprisonment, he appeals as of right.

I

Defendant contends that he was denied his constitutional rights to cross-examine the victim regarding prior false allegations of sexual activity and to present evidence that the victim's depression was due to sexual activity with someone else. The following facts are relevant to our analysis of defendant's argument.

The victim was a seven-year-old boy named

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

Troy. In June, 1982, Troy and his family moved from Lansing to Potterville. About the same time, a close family friend named Debbie also moved with her three children from Lansing to Potterville. Defendant was Debbie's live-in boyfriend at that time.

After getting settled into the new environment and getting the kids started at a new school, the two families began seeing much of each other again. Defendant often babysat Troy and his younger brother and Debbie's three kids while the two mothers went shopping and did other things together. On a couple occasions, Troy stayed at Debbie's overnight.

On March 19, 1983, Debbie's daughter Peggy told her mother that Troy had indicated he had been sodomized by defendant. Troy's mother was told about this the next day and Troy confirmed that defendant had sodomized him. Defendant denied abusing Troy but said that Troy had indicated that he was sodomized by Joey, a boy in Lansing. Troy insisted that he had been sodomized by both Joey and defendant.

At trial, Troy's mother testified that Troy's disposition changed around September, 1982, and he became more withdrawn and less affectionate. Troy's father testified that he noticed the change in Troy in the winter. The change was significant enough that Troy's mother sought counselling to try and find out what was wrong. After March 20, 1983, when Troy told about being victimized by defendant, Troy's disposition returned to normal. The prosecutor used this evidence of Troy's changes in disposition to bolster Troy's testimony that he had been sodomized by defendant on February 4, 1983, and on at least ten other occasions.

Defendant strenuously sought at trial to introduce evidence of Troy's accusation against Joey.

Primarily, defendant had in mind impeaching Troy by proving that the accusation against Joey was false. Defendant, however, was unable to come up with any credible proofs to show that Troy had lied. Defendant also sought to use Troy's accusation against Joey, assuming it was true, as an explanation for Troy's change in disposition. The prosecutor opposed this use, arguing that there was too large a time gap between Troy's last opportunity to be abused by Joey (before Troy left Lansing in June, 1982) and his disposition change in September or October. Defendant has not addressed the significance of this time gap but merely refers this Court to the discussion in part I of *People v Mikula,* 84 Mich App 108; 269 NW2d 195 (1978).

The issue before us arises in the context of our rape-shield law, MCL 750.520(j)(1); MSA 28.788(10)(1). Notwithstanding the statute, "the defendant should be permitted to show that the complainant has made false accusations of rape in the past". *People v Hackett,* 421 Mich 338, 348; 365 NW2d 120 (1984). Typically, such impeachment has occurred where, before trial, the complainant has acknowledged that a prior accusation was false. See *People v Werner,* 221 Mich 123; 190 NW 652 (1922); *People v Wilson,* 170 Mich 669; 137 NW 92 (1912); *People v Evans,* 72 Mich 367; 40 NW 473 (1888). A different situation was presented in *Mikula, supra.* In that case, whether the complainant's accusation was true or false, the prosecutor had a legitimate use for the evidence. However, for reasons that we state later, we do not find the instant case analogous to *Mikula.*

Troy has not acknowledged that his accusation against Joey was false and it does not appear likely that Troy would have changed his testimony

at trial.[1] Furthermore, defendant has no credible evidence that Troy falsely accused Joey but seeks to rely merely on a few inferences of little probative value. We do not believe that defendant's right to confront Troy extends to turning the trial into a fishing expedition on the question of Joey's guilt or innocence. The trial court did not err in applying the rape-shield law to prohibit defendant from placing evidence of Troy's accusation against Joey before the jury where defendant's efforts to characterize the accusation as false would have been futile.

In *Mikula, supra,* p 114, this Court stated the well-settled rule that "where the prosecution substantiates its case by demonstrating a physical condition of the complainant from which the jury might infer the occurrence of a sexual act, the defendant must be permitted to meet that evidence with proof of the complainant's prior sexual activity tending to show that another person might have been responsible for her condition". The Court concluded that this common-law rule was not limited to the conditions expressly included in the rape-shield statute. Thus, we think the rule might apply in a proper case to a change in disposition similar to what occurred here to Troy. However, in the instant case, the prosecutor properly objected that there was too great an intervening period between the possible assault by Joey and the change in Troy's disposition. Defendant has never responded to the prosecutor's objection and has not offered any evidence showing that Troy's symptoms may be causally linked to an event occurring at least three months earlier. Accordingly, we find no error.

---

[1] Troy's accusations against Joey were made to his mother in the presence of Debbie and defendant, then to the police and, finally, at the preliminary examination. Defendant did not make a separate record at trial to see if Troy would continue to hold to his accusation.

In *Mikula,* the prosecutor introduced evidence showing that the complainant's hymenal ring was not intact. That evidence was not of such a nature as to suggest when the condition was caused. The defendant's effort to show that the complainant's condition was attributable to someone else quite rightly, therefore, did not turn on a question of timing but simply on showing that someone else may have had intercourse with the complainant or otherwise broken her hymen. In contrast to *Mikula* is *People v Russell,* 241 Mich 125; 216 NW 441 (1927). In *Russell,* the prosecutor introduced the fact of the complainant's pregnancy. In response, the defendant produced evidence that, around the time of conception, the complainant was sneaking out late at night to see another boy. We think it patent that, if defendant had not linked up the complainant's late-night escapades with the time her pregnancy began, defendant's proofs would have been objectionable. The case before us is more like *Russell* than like *Mikula* and we conclude that defendant did not lay an adequate foundation for admission of the evidence.

II

Defendant next contends that the admission of similar acts evidence, *i.e.,* defendant's numerous uncharged acts of sodomy on Troy, denied him a fair trial. The trial court exercised its discretion and allowed the evidence pursuant to *People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1973). We find *DerMartzex* to be on point and the trial court's ruling eminently correct.

III

Defendant argues that he was denied a fair trial

when Troy was shown, over objection, two suggestive and prejudicial "anatomically correct" dolls to demonstrate the sexual offense. Defendant asserts that the dolls were prejudicial as depicted because the "man" doll when compared to the "cute little boy" doll was designed particularly to appear "cynical" looking (defendant possibly intends to say "sinister" looking). Our review at oral argument of photographs of these dolls does not suggest that untoward prejudice would have resulted to defendant at trial from the mere appearance of the dolls.

Defendant further asserts that the dolls were admitted at trial without a proper foundation establishing that their use was necessary to assist Troy while testifying. Defendant acknowledges that Troy was timid but suggests that timidity is not unnatural in such a sensitive case. We think the situation presented to the trial court was one for the sound exercise of its discretion. *People v Gunter,* 76 Mich App 483, 493-494; 257 NW2d 133 (1977). The court did not find the dolls' looks to be prejudicial and believed they would assist Troy in testifying. We find no abuse of discretion.[2]

IV

Defendant next argues that the trial court erred in finding that Troy's examining physician and Debbie's daughter Peggy were not res gestae witnesses. While the court did make such a finding, it also ruled that defendant did not timely raise the

[2] While the question of the admissibility of anatomically correct dolls has not been previously addressed in Michigan, other courts have allowed use of the dolls. *Commonwealth v Trenholm,* 14 Mass App 1038; 442 NE2d 745 (1982); *State v Eggert,* 358 NW2d 156 (Minn App, 1984); *State v Jenkins,* 326 NW2d 67 (ND, 1982). Use of the dolls in investigating abuse has been recognized by this Court. *In the Matter of Rinesmith,* 144 Mich App 475; 376 NW2d 139 (1985).

issue. Defendant was aware of the two witnesses and their testimony well before trial and did not object to the prosecutor's failure to endorse or call them until after the prosecution rested, at which time defense counsel brought a motion to dismiss. As an alternative to granting the motion, counsel asked that the court instruct the jury that the missing witnesses' testimony could be considered as favorable to the defense. Defendant did not allege that any prejudice had resulted but asserted merely that the prosecutor had an absolute duty to produce all res gestae witnesses. We agree with the trial court that defendant did not timely raise this issue. *People v Howey,* 118 Mich App 431, 439; 325 NW2d 451 (1982). We perceive no manifest injustice to defendant by our failure to address the merits of this issue.

V

Defendant argues that the trial court erred in allowing a doctor, who had not examined Troy, to testify on rebuttal. We find no merit in this contention. Defendant had introduced a hospital report showing that on March 20, 1983, Troy had no signs of physical or mental trauma. Defendant's apparent intent was to suggest to the jury that Troy had not been sodomized. The doctor testified on rebuttal that she examined the report and it was not inconsistent with Troy's having been sodomized, assuming about 44 days had passed between the event (February 4) and the examination (March 20). This rebuttal was appropriate.

VI

Defendant finally raises several objections regarding his sentencing, and each has to do with

his juvenile record. Defendant's presentence report detailed a fairly lengthy record of run-ins with the law, with several entries involving sex offenses— sodomy, gross indecency, assault. The Sentence Information Report assessed two points for Prior Record Variable 5 because of defendant's juvenile record. At sentencing, defense counsel advised the court that the presentence report did not indicate that defendant had counsel at the juvenile proceedings and it was his understanding that defendant had been unrepresented. Counsel further advised the court that the record could not be considered in sentencing defendant if defendant was not represented by counsel. The prosecutor did not respond to defendant's claims. The court then stated that it was writing counsel's objection on the presentence report. Sentencing was adjourned pending a pyschological evaluation of defendant and was adjourned again until use of the sentencing guidelines became mandatory. When defendant was finally sentenced, the court departed from the guideline sentence range of six to ten years because the "[h]istory of offender and diagnosis indicates he will be a potential danger to children the rest of his life".

It is clear from the assessment of two points for Prior Record Variable 5 that some of defendant's juvenile charges were scored as resulting in adjudications. Defendant has not addressed this fact either at sentencing or on appeal, and we cannot tell from the record which of the 13 charges were considered as leading to adjudications. Defendant relies on the rule that prior convictions, where the record indicates no counsel or formal waiver of counsel, may not be used to enhance punishment in a subsequent proceeding. *People v Schneider*, 132 Mich App 214, 216; 347 NW2d 21 (1984). Defendant is not entitled to relief under this rule

for two reasons. One, the record does not indicate that defendant was without counsel but is silent on the matter. Defendant has not presented prima facie proof of nonrepresentation. *People v Moore,* 391 Mich 426; 216 NW2d 770 (1974). Two, the presentence report does not state whether the juvenile charges resulted in adjudications but gives information about the offenses. While convictions which occur while a defendant is not represented by counsel may not be considered,[3] defendant does not give any authority for not considering the information of defendant's criminal conduct and his life and character, information which this Court has said may properly be considered. See *People v Butts,* 144 Mich App 637; 376 NW2d 177 (1985); *People v Burton,* 44 Mich App 732; 205 NW2d 873 (1973); *People v Jones,* 19 Mich App 170; 172 NW2d 485 (1969). We agree with the people that defendant has not preserved for appeal his claim that the sentencing court improperly relied on counselless "convictions".

Assuming that it is not clear that the court relied on the juvenile record, defendant argues that he is entitled to resentencing for the very reason that the court did not indicate its belief on the merits of defendant's objection to use of the juvenile record. With this argument we agree. To defendant's objection, the court responded, "All right, Defense Counsel seeks Court to disregard the juvenile record as no indication made as to whether the Defendant was represented." The court then moved on to defendant's next objection.

[3] The people do not dispute the general rule of *Moore, supra.* Thus, we do not consider whether defendant's claim that his juvenile adjudications may not be considered is necessarily correct. We note that in *People v Covington,* 144 Mich App 652; 376 NW2d 178 (1985), this Court held that juvenile adjudications which occur while a juvenile is not represented by counsel are not per se constitutionally infirm.

This case falls squarely within the rule of *People v Edenburn,* 133 Mich App 255, 258; 349 NW2d 151 (1983), where it is said:

"We hold that the duty of the trial judge to respond involves something more than acknowledging that he has heard the defendant's claims regarding the contents of a presentence report. He must indicate, in exercising his discretion, whether he believes those claims have merit."

Accordingly, while we affirm defendant's conviction, we set aside the sentence and remand the case to the trial court for response by the court to defendant's objection and for subsequent resentencing.

Affirmed in part and remanded.