**UNITED STATES of America**

v.

**Dewayne STAMPER.**

**Crim. No. B–CR–90–174.**

United States District Court,
W.D. North Carolina,
Bryson City Division.

June 12, 1991.

Thomas J. Ashcraft, U.S. Atty., Thomas Asick, Asst. U.S. Atty., Asheville, N.C., for plaintiff.

Robert B. Long, Jr., William A. Parker, Asheville, N.C., for defendant.

## MEMORANDUM OF OPINION AND ORDER

RICHARD L. VOORHEES, Chief Judge.

Defendant moved for permission to introduce certain evidence notwithstanding the provisions of Fed.R.Evid. 412. Defendant's Motion Pursuant to Rule 412 of the Federal Rules of Evidence, filed November 9, 1990 (Pleading No. 25). The proffered evidence consists of cross examination of the prosecuting witness, an alleged statutory rape victim (hereinafter "complainant"), and certain extrinsic evidence, all intended to show that in the past the complainant had schemed to accomplish certain personal goals by falsely accusing three older men of sexual abuse. Defendant contends this evidence is admissible to show complainant's improper motive and plan in falsely accusing Defendant in the instant case. He seeks also the admission of information from certain medical and psychological reports. The admissibility of particular evidence not discussed herein and arising out of the medical and psychologists' reports will be dealt with at trial time. The Government has opposed admission of much of the evidence sought by Defendant. *See* Government's Notice of Intent to Op-

pose Certain Evidence, filed October 17, 1990 (Pleading No. 23). The proffered evidence will be allowed as provided in this Order.

## I. FACTUAL BACKGROUND

### A. *Procedural History*

On December 3, 1990, the captioned criminal case was called for trial, and jury selection began. On that day Defendant filed a brief supporting his position on the proffered evidence.

On December 4, 1990, after voir dire had resulted in the selection of eight jurors, the Government notified the Court of the complainant's desire to have independent counsel appointed for the protection of her privacy interests, pursuant to the policies enunciated in *Doe v. United States*, 666 F.2d 43, 46 (4th Cir.1981), *In re McDaniel*, 861 F.2d 714 (4th Cir.1988) (unpublished opinion), and *United States v. Saunders*, 736 F.Supp. 698, 700 (E.D.Va.1990). After consulting with the complainant, the Court appointed attorney Steven Lindsay to represent her interests. The Court then conducted an *in camera* hearing to determine the admissibility of Defendant's proffered evidence. The Court heard testimony from, and all three parties were permitted to examine, the following witnesses: complainant; complainant's mother, Maxine Beck; complainant's father, Jack Beck; and two of the three men previously accused by the complainant of sexual abuse, Robert Francis "Bobby" Stamper (complainant's uncle) and Reuben Teesataskie (the live-in boyfriend of complainant's mother).[1] Upon the Court's own motion, the case was continued so as to provide Mr. Lindsay adequate time for preparation and to allow the Court to consider Defendant's evidentiary motion. *See* Order, filed December 11, 1990 (Pleading No. 28). The

Court therefore excused the eight jurors already selected.

The Government, counsel for the Defendant, and counsel for the complainant have since filed briefs on the question of Rule 412 evidence. Complainant's Motion to Prohibit Evidence of Alleged Prior Sexual Activity, filed January 2, 1991 (Pleading No. 29); Defendant's Supplemental Brief on Proffered Evidence, filed January 7, 1991 (Pleading No. 30); Government's Brief on Rule 412 Issue, filed January 11, 1991 (Pleading No. 31).

### B. *The In Camera Hearing*

At the *in camera* hearing described above, the evidence showed:

1. Complainant is the daughter of Maxine and Jack Beck, who were divorced prior to the events herein contemplated. Jack Beck remarried and lives in the Bird Town section of the Cherokee Indian Reservation. Maxine Beck lives with her boyfriend Teesataskie in the Big Cove section of the same reservation.

2. In early 1989, approximately one year before the allegations in the instant case, complainant made allegations of sexual fondling against three persons known by both complainant and her natural parents: Teesataskie, complainant's uncle by marriage Bobby Stamper, and her first cousin Maney.

3. The prior allegations were made when complainant was living with her mother and Teesataskie, and at a time when pronounced "difficulties" existed among complainant, her mother, and Teesataskie. *See, e.g.*, Transcript at 10 (testimony of complainant), 31 (testimony of Maxine Beck); Psychological Evaluation of Complainant by Dr. Jerry A. Coffey, at 2–3, 5 (August 8 and 21, 1990).

4. As a result of the prior allegations (and immediately after they were made), com-

---

1. The third older male previously accused by the complainant of sexual abuse is complainant's fourteen year-old cousin, Kenneth Junior "Buffy" Maney. Although subpoenaed, Maney neither appeared nor testified at the *in camera* hearing. *See* Transcript of *In Camera* Hearing, on December 4, 1990 [hereinafter "Transcript"] at 6, 28, 43, 71. Because Maney is a minor and was in school at the time of the hearing, the

Court took no action against Maney for his absence. Although the Government refused so to stipulate, the Court presumes for purposes of this Order that Maney's testimony would have corresponded to that of Bobby Stamper and Teesataskie, thus amounting to a denial of the complainant's allegations of sexual abuse. *See, e.g.*, Transcript at 6 and 71.

plaintiff moved from her mother's house to her father's house. *See, e.g.*, Transcript, at 12 (testimony of complainant), 32 (testimony of Maxine Beck), 53 (testimony of Reuben Teesataskie), 59 (testimony of Jack Beck). The move was made for the purpose of getting complainant away from Teesataskie. Transcript, at 12 (testimony of complainant).

5. Complainant subsequently wrote a letter, the pertinent part of which reads: "Well, I told my dad that my step dad [sic] sexualy [sic] abused me. Then my dad made me talk talk [sic] to a counciler [sic]. The counciler's [sic] name is John. John went and told my step dad [sic] what I said *(which is not true)*". Defendant's Exhibit 3 (handwritten letter, dated March 20, 1989, from complainant to recipient identified only as Kathy) (emphasis added); Transcript, at 22 (emphasis added), 24–25 (testimony of complainant). Complainant therein identified Teesataskie as her "step dad," but he and complainant's mother were unmarried live-ins. *Id.* There was no mention in the letter of Bobby Stamper or Maney, or of the allegations once leveled against them.

6. Upon discovery of the letter, it was submitted to the Cherokee Police Department. Subsequently, the investigations pending against Teesataskie, Maney, and Bobby Stamper were halted, and no charges were ever brought against any of the three men. Transcript, at 17–18 (testimony of complainant), 38–39 (testimony of Maxine Beck), 47 (testimony of Bobby Stamper), 53 (testimony of Reuben Teesataskie), 60–61 (testimony of Jack Beck).

7. Complainant admitted that she had lied about the three prior alleged occurrances of sexual abuse. *See* Transcript, at 17–18; further discussion *infra* at 13.

8. Complainant has since disaffirmed this letter and other recantings, saying that the prior allegations are true. Transcript, at 16, 23 (testimony of complainant). Complainant claims that the phrase "(which is not true)" refers to the next sentence in the letter: "Reuben went and stood over my little sister Candi, and started crying because *he is afraid* some people will *take her away* for what he did!" Defendant's Exhibit 3 (emphasis in original); Transcript, at 23 (testimony of complainant). In other words, complainant contends, contrary to the way it reads literally, that the letter merely refutes the notion that someone would deprive Teesataskie of his custody of Candi because of the sexual molestation allegations, and does not disaffirm her allegations of sexual abuse against Teesataskie.

9. The allegations giving rise to the present case were made when complainant was living with her father, and when "difficulties" arose between complainant and her father. *See, e.g.*, Transcript, at 14–16 (testimony of complainant), 40 (testimony of Maxine Beck), 63–65 (testimony of Jack Beck). More specifically, complainant was caught sneaking back into her father's house after spending an entire evening out with one Allen Littlejohn. *Id.* On at least one other occasion, and without her father's knowledge, complainant had snuck out of her father's house late at night to see Littlejohn and subsequently returned undetected. *Id.* Upon discovering his daughter's late-night activities, Jack Beck threatened to send complainant to "detention." *Id.*

10. Defendant, against whom the present allegations were made, is an acquaintance of complainant and a co-employee, acquaintance/friend, and fishing buddy of her father. *See, e.g.*, Transcript, at 18, 21 (testimony of complainant), 62 (testimony of Jack Beck).

11. As a result of the present allegations (and immediately after they were made), complainant moved from her father's house back into her mother's house, still inhabited also by Teesataskie. Transcript, at 21 (testimony of complainant), 33, 40 (testimony of Maxine Beck), 65–66 (testimony of Jack Beck).

### C. *Issues Presented*

Title 18, United States Code, §§ 2243(a) and 1153 make *it a* crime for an *Indian*

person knowingly to engage in a sexual act in Indian country with another person at least 12 years old but not yet 16 and at least four years younger than the accused. Defendant is charged in two counts with commission of this offense on July 5, 1990, and again on July 16, 1990. On those dates, the complainant was a twelve year-old schoolgirl, and the Defendant was a twenty year-old dispatcher with the Cherokee Police Department. He was married, his wife of one year was expecting their first child in some five months, and he was attending community college in pursuit of law enforcement certification.

The issue before the Court might be stated as follows: in a prosecution for statutory rape, where the Government's sole incriminating evidence is the complainant's testimony and where the complainant has admitted in writing to falsely accusing her mother's boyfriend of sexual molestation on a prior occasion and has made accusations against two others under circumstances tending to show ulterior motives on her part, should the Court find to be admissible (a) cross examination of the complainant concerning such accusations, and (b) testimony by all three prior accusees that the accusations against them were false. Such evidence, according to the Defendant, is necessary to demonstrate that complainant's allegations against him are not true, but rather are part of a continuing scheme on her part to manipulate others for her own selfish purposes.

## II.  DISCUSSION

### A.  *General Principles of Admissibility*

The Court determines the admissibility of evidence. Fed.R.Evid. 104(a). Except as to privileges, the Federal Rules of Evidence do not govern the Rule 104 hearing on admissibility. Fed.R.Evid. 104(a), 101, 1101(b) and (d)(1). Decision is by the preponderance of the evidence. *See, e.g., Bourjaily v. United States,* 483 U.S. 171, 175–76, 107 S.Ct. 2775, 2778–79, 97 L.Ed.2d 144 (1987); 1 S. Saltzburg & M. Martin, *Federal Rules of Evidence Manual,* at 42–43 (5th ed. 1990). Relevant evidence is admissible, unless the rules of evidence or other authority make it excludable. Fed.R. Evid. 402. The Court also determines the competency of evidence—that is, whether it will be excluded though relevant. Fed.R. Evid. 403. Once the evidence is admitted, its weight and credibility is a matter for the jury, and Rule 104 "does not limit the right of a party to introduce … evidence relevant to weight or credibility." Fed.R. Evid. 104(e).

Rule 412 trumps all other rules of evidence. Section (a) renders inadmissible reputation or opinion evidence of the alleged victim's past sexual behavior in a Title 18, Chapter 109A (sexual abuse) prosecution. Section (b)(1) permits evidence of an alleged victim's past sexual behavior, other than reputation or opinion evidence, if it is constitutionally required to be admitted. Other avenues of admissibility within Section (b) do not apply to the instant case.

Rule 412(d) does not define "past sexual behavior," but says it is not "sexual behavior with respect to which an offense under Chapter 109A of Title 18, United States Code, is alleged." A threshold question might be whether demonstrably false past allegations of rape or sexual abuse lodged by the alleged victim are evidence of "past sexual behavior." Several courts have excluded such evidence from the definition of "past sexual behavior."[2] If the answer is

---

**2.** Although applying their individual versions of the rape-shield statute, numerous state courts have found that prior false allegations of rape are not "past sexual behavior." *See, e.g., Covington v. State,* 703 P.2d 436, 442 (Alaska Ct. App.), *different results reached on other grounds,* 711 P.2d 1183 (1985); *West v. State,* 290 Ark. 329, 719 S.W.2d 684 (1986); *People v. Burrell-Hart,* 192 Cal.App.3d 593, 237 Cal.Rptr. 654, 656 (1987); *People v. Wall,* 95 Cal.App.3d 978, 157 Cal.Rptr. 587, 590 (1979); *State v. Barber,* 13 Kan.App.2d 224, 766 P.2d 1288 (1989); *Cox v.*

*State,* 51 Md.App. 271, 281–82, 443 A.2d 607, 613–14 (1982), *aff'd,* 298 Md. 173, 468 A.2d 319 (1983); *People v. Hackett,* 421 Mich. 338, 348, 365 N.W.2d 120, 125 (1984) (dicta); *People v. Garvie,* 148 Mich.App. 444, 384 N.W.2d 796, 798, *app. den.,* 426 Mich. 851 (1986); *People v. Mandel,* 61 A.D.2d 563, 569–71, 403 N.Y.S.2d 63, 68 (1978), *rev'd on other grounds,* 48 N.Y.2d 952, 401 N.E.2d 185, 425 N.Y.S.2d 63 (1979), *cert. denied and appeal dismissed,* 446 U.S. 949, 100 S.Ct. 2913, 64 L.Ed.2d 805 (1980); *State v. Baron,* 58 N.C.App. 150, 153, 292 S.E.2d 741, 743

indeed "no" in the instant case, then Rule 412 would have no application here. However, for purposes of this Order, the Court will assume that Rule 412 does apply, since whether the prior allegations were in fact false would be a jury question, and since the result is essentially the same as if it did not apply.

### B. *The Confrontation Clause and Davis v. Alaska*

The question remaining is whether the proffered evidence is constitutionally required to be admitted. "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. "[A] primary interest secured by [the confrontation clause of the sixth amendment] is the right of cross-examination." *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965).

The case of *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), with its confrontation clause analysis, requires the admission of the evidence Defendant seeks. In that case, the United States Supreme Court allowed evidence of a prior juvenile adjudication, otherwise barred by state policy, to show "possible biases, prejudices, or ulterior motives of the witness as they might relate directly to the issues or personalities in the case at hand." *Id.* at 316, 94 S.Ct. at 1110. According to the *Davis* Court, the State's policy interest in preserving the anonymity of a juvenile offender "cannot require [the] yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness.... [T]he State cannot, consistent with the right of confrontation, require the [Defendant] to bear the full burden of vindicating the State's interest in the secrecy of juvenile criminal records." *Id.* at 320, 94 S.Ct. at 1112. "[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 316–17, 94 S.Ct. at 1110 (citing

(1982); *State v. Le Clair,* 83 Or.App. 121, 730 P.2d 609 (1986); *In re Pittsburgh Action Against Rape,* 494 Pa. 15, 428 A.2d 126 (1981). *See also* C. Wright & K. Graham, *Federal Practice and Procedure* § 5384, at 546; *id.* § 5387, at 579–80

*Greene v. McElroy,* 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959)).

■ In the instant case, Defendant offers evidence of complainant's prior allegations to show that, because she previously made false allegations of sexual abuse and fondling, the complainant is now making "false accusations of a similar nature, with the same intent, motivation and plan to move her residence from one parent to another and to divert attention from herself and place it on an alleged perpetrator to show her motivation, intent and plan in this case." Defendant's Brief on Proffered Evidence, at 7. Such language has its roots in the *Davis* "possible biases, prejudices, or ulterior motives" language. *Davis,* 415 U.S. at 316, 94 S.Ct. at 1110. *See also Hoover v. Maryland,* 714 F.2d 301, 305 (4th Cir.1983); *Chavis v. North Carolina,* 637 F.2d 213, 225–26 (4th Cir. 1980). The lack of physical evidence of rape in the instant case makes complainant the "crucial" witness, in that the "accuracy and truthfulness of [her] testimony [are the] key elements in the [Government's] case." *Davis,* 415 U.S. at 317, 94 S.Ct. at 1110. Therefore, the jury is "entitled to have the benefit of the defense theory before them so that they [may] make an informed judgment as to the weight to place on [complainant's] testimony which provide[s] 'a crucial link in the proof ... of [Defendant's] act.' " *Id.* (quoting *Douglas,* 380 U.S. at 419, 85 S.Ct. at 1077). *See also* 1 S. Saltzburg & M. Martin, at 396–97. In order to confront the complainant effectively, to elucidate the facts and legal issues here in question fully, and to present a defense in a constitutionally viable trial, Defendant must be allowed to set before the jury the proffered evidence of ulterior motives of the complainant. The sixth amendment and *Davis* mandate that the proffered evidence be admitted.

The Government argues that the prior allegations of sexual abuse and fondling

(1980); Galvin, *Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade,* 70 Minn.L.Rev. 763, 859, 862, 863 n. 476 (1986).

lodged by complainant are rendered inadmissible as evidence of "past sexual behavior" under Fed.R.Evid. 412. *See generally* Government's Brief on Rule 412 Issue. The Government has cited case law from other circuits which concluded that the exclusion of prior allegations of rape under Rule 412 was not reversible error. *United States v. Bartlett,* 856 F.2d 1071 (8th Cir. 1988); *United States v. Azure,* 845 F.2d 1503 (8th Cir.1988); *United States v. Cardinal,* 782 F.2d 34 (6th Cir.), *cert. denied,* 476 U.S. 1161, 106 S.Ct. 2282, 90 L.Ed.2d 724 (1986). However, on the present facts and for the reasons discussed herein, the Court finds that Defendant's right of confrontation is paramount to Rule 412's policy of shielding a rape victim from potential embarrassment. *See Davis,* 415 U.S. at 319, 94 S.Ct. at 1112.

The Teesataskie denial of the complainant's prior accusation of sexual abuse against him has strong probative value because of the apparent admission of the complainant that her accusation of him was false: "Well, I told my dad that my step dad [sic] sexualy [sic] abused me.... John went and told my step dad [sic] what I said (which is not true.)" Defendant's Exhibit 3. That admission was made in a writing which demonstrated the willingness of its author to shape her assertions to suit her ends. In the second sentence of the same letter, complainant wrote: "But you have to promise not to tell anyone, O.K." *Id.* In the second to last sentence, she said: "I don't want to talk to them [the F.B.I.] because I'm afraid they will take Candi away from us." *Id.* Moreover, during the course of the *in camera* hearing, the following exchanges took place:

"Q [By Mr. Long, counsel for the Defendant] ... Did—well, whatever your reasons were at the time did you state that you had lied about those [three prior sexual abuse] occurrences and was the case closed?

A [By complainant] Yes.

· · · · ·

Q But after you made the statement that you had lied about the events, the previous allegations, I believe that your father terminated that therapy, did he not?

A Yes."

Transcript, at 17–18. Although at other points in the *in camera* hearing she stated that the prior allegations were true, the complainant admits in the quoted passages that she had previously asserted that the allegations were untrue as to all three prior accusees.

Defendant is charged with a serious crime, one for which, upon conviction, he would likely serve time in prison. Testifying against him is a complainant whose interest in avoiding the embarrassing disclosure of intimate details of her private life has been recognized and, with limited exceptions, shielded by Rule 412. In assessing the balance to be struck between these competing interests, it cannot be ignored that her charges are largely unsubstantiated outside of her own testimony. No physical evidence of rape, sexual abuse, or fondling by Defendant has been presented. In the end, the jury will believe her or the Defendant. Defendant, a law enforcement dispatcher before these charges were brought, seeks to offer exculpatory evidence that the complainant's charges against him were motivated by the bias and ulterior motive of a willful adolescent from a broken home bent on manipulating those who had custody of her and control of her activities.

### C. *General Credibility versus Scheme of Fabrication*

It is not merely a general credibility attack that is at stake here. The question on these facts, rather, is whether Defendant must face prison deprived of the effective ability to develop in evidence the plan or scheme purportedly motivating his accuser, whose state of mind is an essential element of his defense of fabrication. The sixth amendment necessitates this development of Defendant's theory of defense, for only in this way can the Defendant fully and effectively confront the complainant. *See* 1 S. Saltzburg & M. Martin, at 397 ("A Judge may not bar relevant evidence that itself establishes a defense recognized in law."). Defendant's proffered evidence

goes beyond the general provisions of Rule 404(b), for the Defendant does not wish to show that the prior false allegations of sexual abuse, under similar circumstances, establish a mere propensity to fabricate. Rather, Defendant seeks to put forth these allegations as proof of a contrived ulterior motive and plan. In that sense the Court should give, at least if requested by the Government, an instruction that the prior falsehoods by the alleged victim, if so found by the jury, would not in themselves prove falsity in the instant case, but could be considered on the question of motive or plan, if any, behind the accusations in the case at hand. Fed.R.Evid. 105.

Defendant's theory of defense seeks evidentiary support for the proposition that we have here an adolescent girl given (arguably) to lying for the purposes of manipulating her custodians, avoiding therapy, keeping her younger sister Candi at home, and the like. This line of attack on her credibility and motivation is constitutionally required, for not to admit it would be to block out an area of possible truth constituting the very context in which the charges arose. Defendant is entitled to offer the evidence necessary to prove his theory of the case by showing that complainant's charges against him did not evince a single isolated instance of manipulative behavior, but rather were part of an ongoing scheme or, at least, a scheme revealed by the like motives and *modus operandi* of schemes past. While it is true that the complainant now contends that she did not mean what she said in her letter, and withdrew her allegations of sexual abuse solely to keep Candi in her home, what her actual behavior and motivations might have been are for the jury to determine.

There are several facts in the instant case indicative of a contrived scheme of fabrication on the part of the complainant. Both the prior (Teesataskie, Bobby Stamper, and Maney) and the present (Defendant) allegations were made at times of pronounced difficulties between the complainant and the natural parent with whom she was living at the time, and both allowed complainant to move from one parent's home to another. The fact that the prior

and the present allegations were separated by just one year significantly increases the probative value of the prior allegations. 124 Cong.Rec. H11,945, daily ed. Oct. 10, 1978 (statement of Rep. Mann, pertaining to Rule 412) ("In determining the admissibility of such evidence, the court will consider ... the amount of time that lapsed between the alleged prior acts and the rape charged in the prosecution. The greater the lapse of time, of course, the less likely it is that such evidence will be admitted."). All of the allegations were made against older men who either dwelt in or frequented the custodial parent's home. The letter pertaining to the Teesataskie allegations and complainant's *in camera* testimony pertaining to all three prior allegations create reasonable doubt as to the veracity of these prior allegations. *See* Defendant's Exhibit 3; Transcript, at 17–18. Finally, the Court notes that complainant moved back in with her mother and Teesataskie of her own volition after the present allegations were lodged, despite the fact that she had moved out of that home one year earlier for the presumed purpose of getting away from Teesataskie. *See* Transcript, at 12, 21, 33, 40, 65–66. This event tends to show her earlier allegations against Teesataskie were untrue. These remarkable similarities lend substantial credence to the defense theory of an ongoing scheme of fabrication by the complainant.

It is precisely the extensive similarities between the present and the prior allegations that removes the instant case from the general credibility attacks prohibited by the *Bartlett, Azure,* and *Cardinal* line of cases cited by the Government. *Azure* is irrelevant in this context because it dealt only with evidence presented for general witness impeachment and to show the source of injury to the prosecuting witness. *Azure,* 845 F.2d at 1506. The court did not discuss the confrontation clause exception to Rule 412 exclusion of evidence. *Id.* at 1505. The offer of proof in that case does not approach the complexity, and ample substantiation, of the *Davis*-type defense theory of complainant's motive or scheme

of fabricated sexual abuse allegations in the instant case.

The *Bartlett* court followed the line of reasoning espoused by Justice Stewart's concurring opinion in *Davis,* namely that the Constitution does not allow a general credibility attack in every case. *Bartlett,* 856 F.2d at 1089 (citing *Hughes v. Raines,* 641 F.2d 790 (9th Cir.1981)). *See Davis,* 415 U.S. at 321, 94 S.Ct. at 1113 (Stewart, J., concurring). The *Bartlett* court approved of the district court's use of a probative value analysis in determining whether to exclude evidence of prior false accusations of rape as an attack of the complainant's general credibility. *Bartlett,* 856 F.2d at 1088.

The Eighth Circuit in *Bartlett,* and the Sixth Circuit in *Cardinal,* determined that the mere withdrawal of or failure to prosecute earlier allegations of rape is not probative on the question of the complainant's credibility or the falsity of the earlier allegations. *Bartlett,* 856 F.2d at 1088; *Cardinal,* 782 F.2d at 36. The defendants in *Bartlett* and *Cardinal* failed to demonstrate a substantial similarity between the incidents surrounding the prior allegations and the crimes therein charged, thus undermining any inference of a fabrication scheme.[3] *Id.* In *Bartlett,* the complainant's prior allegations preceded the charges against Bartlett by ten to thirteen years. *Bartlett,* 856 F.2d at 1088. The *Bartlett* court expressly avoided the issue of "whether Rule 412 reaches the use of a prior false allegation of rape for impeach-

ment purposes" because of the proposed evidence's minimal probative value under the *Davis* bias, prejudice, or motive standard. *Id.* at 1088–89.

The instant case more closely approaches the facts in the Supreme Court decision *Olden v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988). In *Olden,* the defense theory was that the defendant and the complainant had engaged in consensual sexual relations, and that the complainant had fabricated the charges of rape against the defendant in order to protect her ongoing relationship with her live-in boyfriend. *Olden,* 488 U.S. at 230, 109 S.Ct. at 482. The Supreme Court began by reiterating the central principle of *Davis,* that " 'the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.' " *Id.* at 231, 109 S.Ct. at 483 (quoting *Davis,* 415 U.S. at 316–17, 94 S.Ct. at 1110). It followed, according to the *Olden* Court, that " '[a] reasonable jury might have received a significantly different impression of [the witness'] credibility had [defense counsel] been permitted to pursue his proposed line of cross-examination.' " *Olden,* 488 U.S. at 232, 109 S.Ct. at 483 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986)). The Court thus found reversible error in the trial court's exclusion of evidence pertaining to the complainant's relationship with her live-in boyfriend. *Olden,* 488 U.S. at 233, 109 S.Ct. at 484.[4]

---

**3.** To square with the defense theory of a fabrication scheme, there must be proof of the falsity of the prior allegations. Galvin, 70 Minn.L.Rev. at 861. It is the substantial proof of falsity which sets the prior allegations of rape in this case apart from the prior allegations considered in the cases offered by the Government. *Bartlett,* 856 F.2d at 1088. The importance of proof of the prior allegation's falsity has been enunciated in numerous state court cases as well. *See, e.g., Covington,* 703 P.2d at 442; *State v. Oliver,* 158 Ariz. 22, 760 P.2d 1071, 1078 n. 4 (1988); *State v. Hutchinson,* 141 Ariz. 583, 688 P.2d 209, 211 (1984); *Barber,* 13 Kan.App.2d 224, 766 P.2d 1288; *State v. Anderson,* 211 Mont. 272, 686 P.2d 193, 200 (1984); *People v. Makela,* 147 Mich.App. 674, 383 N.W.2d 270, 276, (1985); *State v. Johnson,* 102 N.M. 110, 692 P.2d 35, 42 (1984); *State v. Kringstad,* 353 N.W.2d 302, 311 (N.D.1984); *Le Clair,* 83 Or.App. 121, 730 P.2d

609; *State v. Blalack,* 434 N.W.2d 55, 58 (S.D. 1988); *State v. Padilla,* 110 Wis.2d 414, 329 N.W.2d 263 (1982).

**4.** Other courts have also admitted similar evidence where there was a viable and demonstrable motive or scheme for fabrication by the complainant. *See, e.g., United States v. Dorsey,* 16 Mil.Jus. 1 (C.M.A.1983); *State v. Bass,* 69 Or.App. 166, 683 P.2d 1040 (1984); *State v. Morgan,* 66 Or.App. 675, 675 P.2d 513 (1984). *See also United States v. Nez,* 661 F.2d 1203, 1206 (10th Cir.1981) (establishing the propriety of the *Davis* motive or scheme to fabricate defense theory in the rape context, but excluding such evidence in that case because of the defendant's failure to make such an argument at trial and the insufficiency of proof as to such a motive).

In the instant case, Defendant has vigorously asserted a motive or scheme of fabrication by the complainant and has produced substantial supporting evidence. The absence of Defendant's proffered evidence pertaining to the three prior allegations would deprive the jury members of substantial information relevant to their duty of witness credibility assessment. Any ambiguity potentially posed by this evidence is to be resolved by the jury. *See Saunders,* 736 F.Supp. at 701.

The Court is of the view that Defendant's substantial interest in presenting an adequate defense, predicated on the concept of complainant's motive or scheme, against the very real possibility of an extended loss of liberty, Defendant's sixth amendment right to confront witnesses against him, and the general constitutional importance of effective cross-examination outweighs the possibility of embarrassment complainant might suffer upon the revelation of her prior allegations of sexual abuse against the three. *See Davis,* 415 U.S. at 319, 94 S.Ct. at 1112; *Lawson v. Murray,* 837 F.2d 653, 656 (4th Cir.), *cert. denied,* 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988); *United States v. Bodden,* 736 F.2d 142, 145 (4th Cir.1984); Galvin, 70 Minn.L. Rev. at 839.

### D. *Interests of the Complainant*

This Court is not, and must not be, insensitive to the purposes of Rule 412 and must not countenance a defense attempt merely to journey into the alleged victim's sexual past by eliciting evidence of events having little probative value and amounting to a general assault on credibility. *See, e.g.,* 124 Cong.Rec. H11,945, daily ed. Oct. 10, 1978 (statements of Rep. Mann and Rep. Holtzman); C. Wright & K. Graham § 5382, at 494 (quoting 14 *Weekly Compilation of Presidential Documents* 1902 (Oct. 30, 1978)). But the Rule explicitly recognizes that in a proper case the constitutional right of a criminal defendant to confront the witnesses against him shall be paramount. Rule 412(b)(1).

Similarly, the Court is not insensitive to the complainant's privacy interests in its evaluation of unfair prejudice or determination of admissibility. However, "[t]he issue is not whether evidence is prejudicial in the sense that it is detrimental to someone involved in the trial. Rather, the question is whether the evidence will arouse the jury's emotions of prejudice, hostility, or sympathy." Tanford & Bocchino, *Rape Victim Shield Laws and the Sixth Amendment,* 128 U.Pa.L.Rev. 544, 569–70 (1980). Granted, pursuant to Fed.R.Evid. 611(a)(3), the Court must shield witnesses from "harassment or undue embarrassment," but there is no corresponding judicial obligation to protect a witness from being discredited or tangentially embarrassed. *See, e.g., Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931); *United States v. Society of Independent Gasoline Marketers,* 624 F.2d 461, 469 (4th Cir.1979), *cert. denied sub nom. Amerada Hess Corp. v. United States,* 449 U.S. 1078, 101 S.Ct. 859, 66 L.Ed.2d 801 (1981); *Snyder v. Coiner,* 510 F.2d 224, 225 (4th Cir.1975); *State v. Vonesh,* 135 Wis.2d 477, 401 N.W.2d 170 (Wis. Ct.App.1986). *See also* Tanford & Bocchino, 128 U.Pa.L.Rev. at 569–70 ("Adverse psychological effects suffered by crime victims, although regrettable, are not grounds for excluding probative evidence."). To paraphrase *Davis,* whatever temporary embarrassment might result to the complainant or her family by disclosure of her prior allegations of rape is outweighed by Defendant's right "to probe into the influence of possible bias in the testimony of a crucial identification witness." *Davis,* 415 U.S. at 319, 94 S.Ct. at 1112.

### E. *The Admissibility of the Proffered Testimony Under Other Rules of Evidence*

The probative value of the proffered evidence, making the defense theory of complainant's fabrication scheme more probable than without the evidence, substantially outweighs any possibility of delay, misleading the jury, or confusion of the issues. Fed.R.Evid. 401, 403. The significant probative value of such evidence, particularly in light of the *Davis* "possible biases, prejudices, or ulterior motives" standard, can be presented through the

testimony of up to three additional witnesses (Teesataskie, Bobby Stamper, and Maney) and the introduction of the letter into evidence, therefore minimizing any potential for delay. The evidence will certainly aid the jury in the determination of the complainant's credibility as a witness and the evaluation of the propriety of the defense theory. *Davis,* 415 U.S. at 316–17, 94 S.Ct. at 1110; 1 S. Saltzburg & M. Martin, at 396–97. Because the key issue in this case is whether a rape of the complainant by the Defendant actually occurred, there is no confusion of issues, but merely an inference offered by the Defendant pertaining to the key issue which the jury may choose to embrace or to ignore. "[E]vidence of prior false allegations is so probative of the central issue in a rape case that to exclude it might deny evidence critical to the defense." Galvin, 70 Minn.L. Rev. at 861. *See also* Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom,* 77 Colum.L.Rev. 1, 66–67 (1977); Galvin, 70 Minn.L.Rev. at 805, 826; Tuerkheimer, *A Reassessment and Redefinition of Rape Shield Laws,* 50 Ohio St. L.J. 1245, 1263 (1989). This is particularly true where, as in this case, there is a complete void of physical evidence of rape and "the jury has nothing to rely on but the diametrically opposed versions of the event put forth by the complainant and the accused." Galvin, 70 Minn.L.Rev. at 861 (footnotes omitted).

Finally, there is no danger of unfair prejudice sufficient to outweigh the probative value of the prior allegations against the three older males. " 'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed.R.Evid. 403, Notes of Advisory Committee on Proposed Rules. Given the evidence presented regarding the prior allegations, the Court finds that the jury will be able impartially and logically to weigh the letter, the testimony of the complainant and the accusees, and the events surrounding both the prior and the present allegations in reaching a properly based decision.

Based on the current forecast of the evidence, and the discussion herein, the Court finds that the probative value of the evidence sought by Defendant outweighs the danger of prejudice to the Government or the complainant. Of course, there is always the possibility that the accusees' evidence, far from being cumulative in aiding the Defendant's theory, would be cumulative in aiding the Government's. But that would be for the jury to determine. The Court may use Rule 403 to limit unnecessary delay and waste of time relative to the (extrinsic) evidence concerning the three prior accusees.

Although the proffered evidence implicates both Rule 404(b) and Rule 608(b), Rule 404(b) is the controlling provision. Even if Rule 608(b) governed, "Rule 608(b) should not be read so broadly as to disallow the presentation of extrinsic evidence that is probative of a material issue in a case." *United States v. Smith Grading & Paving, Inc.,* 760 F.2d 527, 531 (4th Cir.), *cert. denied sub nom. Dellinger, Inc. v. United States,* 474 U.S. 1005, 106 S.Ct. 524, 88 L.Ed.2d 457 (1985). Bias and interest of a witness are not collateral. *See, e.g., Van Arsdall,* 475 U.S. at 678–80, 106 S.Ct. at 1434–35; *Davis,* 415 U.S. at 316–17, 94 S.Ct. at 1110; *McCormick on Evidence* 85–89 (3d ed.1984). As demonstrated above, the similarity of the events surrounding the prior and the present allegations, and the high degree of probative value of the proffered evidence on the material issue of complainant's motives would prompt the Court to exercise its discretion under Rule 608(b) to admit the proffered evidence. *See, e.g., United States v. Fowler,* 735 F.2d 823, 830 (5th Cir.1984); *United States v. Cole,* 617 F.2d 151, 153–54 (5th Cir.1980).

Rule 404(b) is not limited to evidence pertaining to the defendant, for it may be used to prove material issues as to "the witness' motives." *United States v. Miller,* 895 F.2d 1431, 1436 (D.C.Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 79, 112 L.Ed.2d 52 (1990) (quoting *United States v. Scarfo,* 850 F.2d 1015, 1021 (3d Cir.), *cert. denied,* 488 U.S. 910, 109 S.Ct. 263, 102 L.Ed.2d 251 (1988), and citing *United*

*States v. Foster,* 889 F.2d 1049, 1053 (11th Cir.1989)). *See also United States v. Martin,* 773 F.2d 579, 582 (4th Cir.1985); Fed. R.Evid. 404(b) (admitting evidence of act by "a person" on issues other than character).

Neither is Rule 404(b) limited to evidence of criminal activity, but it encompasses "any conduct of [a witness] which may bear adversely on the jury's judgment of his character." *United States v. Cooper,* 577 F.2d 1079, 1088 (6th Cir.), *cert. denied,* 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978). *See also Fowler,* 735 F.2d at 830; *United States v. Senak,* 527 F.2d 129, 143 (7th Cir.1975), *cert. denied,* 425 U.S. 907, 96 S.Ct. 1500, 47 L.Ed.2d 758 (1976); *Campus Sweater & Sportswear Co. v. M.B. Kahn Constr. Co.,* 515 F.Supp. 64, 93 (D.S. C.1979), *aff'd,* 644 F.2d 877 (4th Cir.1981); Fed.R.Evid. 404(b) (admitting evidence of "other crimes, wrongs, or acts" on issues other than character). The admissibility of the proffered evidence demonstrating the defense theory of complainant's scheme of fabricating sexual abuse allegations is expressly contemplated by the Rule 404(b) list of material issues, which is itself not "exhaustive, but merely illustrative." *Miller,* 895 F.2d at 1435 (quoting *United States v. Moore,* 732 F.2d 983, 987 n. 31 (D.C.Cir. 1984)). *See also United States v. Stockton,* 788 F.2d 210, 219 n. 15 (4th Cir.), *cert. denied,* 479 U.S. 840, 107 S.Ct. 147, 93 L.Ed.2d 89 (1986).

Furthermore, the Court finds that "the standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword," because the ordinary risks of prejudice to the Defendant are absent in such a situation. *United States v. Aboumoussallem,* 726 F.2d 906, 911 (2d Cir.1984). *See also Huddleston v. United States,* 485 U.S. 681, 688–89, 108 S.Ct. 1496, 1500, 99 L.Ed.2d 771 (1988). (Congress intended to eliminate restrictions on the admissibility of 404(b) evidence); *United States v. McClure,* 546 F.2d 670, 673 (5th Cir.1977). "In such cases, the only issue arising under Rule 404(b) is whether the evidence is relevant to the existence or non-existence of some fact pertinent to the defense."

*Aboumoussallem,* 726 F.2d at 912. As discussed above, *the proffered evidence has already survived the required probity and prejudice evaluation under Rules 401 and 403 and is easily admissible under Rule 104. See Huddleston,* 485 U.S. at 687, 108 S.Ct. at 1499; *Martin,* 773 F.2d at 582. The Court notes the Government's concession that Defendant's proffered evidence is admissible under Rules 404(b) and 608. Government's Brief on Rule 412 Issue, at 1.

There is sufficient relevant evidence, going to the issues of the falsity of the three prior allegations of sexual abuse and the bias or motive of the complainant in making such allegations, to warrant the submission of such evidence to the jury. Thus, it becomes the jury's province in this case to determine the veracity of these previous allegations and the weight such allegations may be accorded in their final determination of Defendant's guilt or innocence.

Finally, Rule 412 does not bar admission of evidence of the complainant's past sexual behavior where such evidence is offered to demonstrate the accused's state of mind. *See Doe,* 666 F.2d at 48; *Saunders,* 736 F.Supp. at 702. However, "admissibility still hinges on whether the evidence passes muster under Rule 403, Fed.R.Evid." and whether it is relevant to the issues in question. *Saunders,* 736 F.Supp. at 702, 704 (citing *Doe*). The Court agrees with the *Saunders* court that "the Fourth Circuit doubtless intends careful application of the state of mind exception to ensure that it is not used to avoid the Rule [412]." *Saunders,* 736 F.Supp. at 704, n. 8. Conversely, particularly in light of the *Davis* decision, the Court believes Rule 412 cannot be manipulated by the Government or the complainant so as to envelop the complainant's motivation or state of mind in a shroud of statutory inadmissibility, thereby depriving Defendant of "a proper and important function of the constitutionally protected right of cross-examination." *Davis,* 415 U.S. at 316–17, 94 S.Ct. at 1110.

## III. ORDER

IT IS, THEREFORE, ORDERED that Defendant's motion for the admission of evidence pertaining to the complainant's prior allegations of sexual abuse and fondling against Reuben Teesataskie, Robert Francis "Bobby" Stamper, and Kenneth Junior "Buffy" Maney is hereby ALLOWED.