**UNITED STATES of America, Appellee,**

v.

**Anthony Damian AZURE, Appellant.**

**No. 87–5043.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 18, 1987.

Decided May 6, 1988.

Ralph A. Vinje, Bismarck, N.D., for appellant.

Norman G. Anderson, Asst. U.S. Atty., Fargo, N.D., for appellee.

Before ARNOLD and FAGG, Circuit Judges, and LARSON,[*] Senior District Judge.

LARSON, Senior District Judge.

Defendant Anthony Damian Azure was convicted by a jury of carnal knowledge of a female under the age of sixteen, in violation of 18 U.S.C. §§ 1153 and 2032. This Court reversed defendant's initial conviction because we found the district court had improperly admitted expert opinion testimony on the credibility of the victim. *United States v. Azure*, 801 F.2d 336, 341 (8th Cir.1986). On retrial, a jury again found the defendant guilty as charged. Defendant has again appealed to this Court, arguing his subsequent conviction must be reversed because the district court[1] erred in (1) excluding evidence of the victim's past sexual behavior under Fed.R.Evid. 412; (2) admitting the victim's out-of-court statement to social worker Linda Heilman identifying Azure as the individual who had sexually abused her; and (3) admitting excerpts from defendant's prior sworn testimony. We affirm.

## I. BACKGROUND

Azure was charged with having had sexual intercourse on or about December 8, 1984, with Wendy Lozensky, one of the daughters of Azure's common law wife, Patty Lozensky.[2] Wendy was ten years old at the time. She testified at trial concerning the events surrounding the December 8th incident, and also testified that Azure had been abusing her since she was eight years old. Wendy's sisters, Melissa Lozensky and Michelle Faine, testified that they had seen Azure take Wendy into his bedroom alone when their mother Patty was gone. They also corroborated Wendy's testimony concerning the events on the evening of December 8th.

According to the girls' testimony, Wendy, Melissa, and Michelle were staying with their two younger siblings at Mary Lou Caine's house on December 8, 1984, while Azure and their mother went out drinking. Azure and Patty had a fight and Patty went to her mother's house. Later that evening, Azure returned alone to Mary Lou Caine's house to pick up the children. He was angry and drunk and Caine did not want the children to leave with him. Azure hit Wendy and gave her a bloody nose. When Wendy went outside to put some snow on her nose, Azure grabbed her and took her back to their house. He attempted to have sexual intercourse with her in his pickup truck on the way home and again when they got home. He also forced her to have oral sex. In the morning, Wendy called Mary Lou Caine and asked if she would pick her up and take her with the rest of the children to their grandmother's house. Caine agreed, and met Wendy across the road from Azure's home. Azure was still sleeping when Wendy left, and she asked Bill Berceir, who also lived with them, not to tell Azure where she was going.

When Wendy and Melissa went to stay with their father for Christmas, he brought them to social services personnel because he suspected they were being physically abused. Social worker Linda Heilman interviewed Wendy in late December, 1984, and Wendy told her about the episodes of sexual abuse. At Heilman's request, Wendy was examined by Dr. Warren Keene on December 31, 1984. The examination revealed that Wendy had a three centimeter healing laceration on the side wall of her vagina, which Dr. Keene testified would have resulted from some recent, painful penetration to the vaginal wall; a vaginal opening of two centimeters, which Dr. Keene stated was twice the size one would anticipate in a child of Wendy's age; and a stretched hymenal ring. Wendy also test-

---

[*] The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

[1] The Honorable Paul Benson, United States Senior District Judge for the District of North Dakota.

[2] Patty Lozensky was convicted in the initial trial of violation of 18 U.S.C. § 4. She has not appealed from this conviction.

ed positive for gonorrhea.[3] Wendy told Dr. Keene that Azure had sexually abused her and that "the last time Damian did that to me was 2 or 4 weeks ago." Keene offered his opinion, based on his medical examination, that Wendy was in fact a victim of sexual abuse.

## II. DISCUSSION

### A. Exclusion of Wendy's Alleged Past Sexual Activities

Prior to trial, defendant sought to introduce evidence of past sexual relations between Wendy and a boy named David Malterre under Fed.R.Evid. 412. Rule 412 provides that evidence of a victim's past sexual behavior is not admissible except in certain narrow situations. The relevant exception in this case states that, subject to the procedural and relevancy requirements of subdivision (c),[4] evidence of specific instances of an alleged victim's past sexual behavior is admissible if offered "upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury." Fed.R.Evid. 412(b)(2)(A).

We have previously applied Rule 412 in the context of child abuse cases. *See United States v. Shaw*, 824 F.2d 601, 602–04 (8th Cir.1987); *cert. denied*, —— U.S. ——, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988). In *Shaw*, we affirmed the district court's exclusion of evidence of prior sexual behavior on the ground that the victim's stretched hymen did not constitute an "injury" within the meaning of Rule 412(b)(2)(A). *Id.* at 605. In this case, the victim suffered from a healing laceration on her vaginal wall; an "injury" sufficient to trigger subdivision (b)(2)(A)'s exception. The district court nonetheless excluded defendant's proffered evidence of Wendy's past sexual behavior on the ground that it was not relevant to the source of this injury. We agree.

Following defendant's Rule 412 motion, the district court held an in camera hearing at which Malterre and Patty Lozensky testified. Malterre's testimony was vague and at times contradictory. He stated that he had had consensual sexual intercourse with Wendy, but could not remember how many times. He testified it could have been between one and four times over a one and one half year period. He also could not remember any specific dates; he

---

**3.** Dr. Robert ten Bensel, a pediatrician and an expert on child abuse, also interviewed Wendy and reviewed the medical records in the case. He testified that in his opinion Wendy was the victim of sexual abuse, and confirmed Dr. Keene's testimony that only repeated or chronic penetration would cause the stretched hymenal ring and the two centimeter vaginal opening which was observed in Wendy. Ten Bensel also confirmed that the laceration on Wendy's vaginal wall would have been very painful; something a child would not have submitted to voluntarily.

**4.** Subdivision (c) states as follows:

(c)(1) If the person accused of committing rape or assault with intent to commit rape intends to offer under subdivision (b) evidence of specific instances of the alleged victim's past sexual behavior, the accused shall make a written motion to offer such evidence not later than fifteen days before the date on which the trial in which such evidence is to be offered is scheduled to begin, except that the court may allow the motion to be made at a later date, including during trial, if the court determines that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that

the issue to which such evidence relates has newly arisen in the case. Any motion made under this paragraph shall be served on all other parties and on the alleged victim.

(2) The motion described in paragraph (1) shall be accompanied by a written offer of proof. If the court determines that the offer of proof contains evidence described in subdivision (b), the court shall order a hearing in chambers to determine if such evidence is admissible. At such hearing the parties may call witnesses, including the alleged victim, and offer relevant evidence....

(3) If the court determines on the basis of the hearing described in paragraph (2) that the evidence which the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial to the extent an order made by the court specifies evidence which may be offered and areas with respect to which the alleged victim may be examined or cross-examined.

(4) For purposes of this rule, the term "past sexual behavior" means sexual behavior other than the sexual behavior with respect to which rape or assault with intent to commit rape is alleged.

Fed.R.Evid. 412(c).

could only recall that the first time was when he was thirteen years old. He denied having sex with Melissa and then minutes later stated that he had had sex with Melissa. He nonetheless clearly testified that he never forced or hurt Wendy, and she never cried. At the time of trial, Malterre was living with Rose Azure, defendant's mother. Malterre had previously denied any sexual contact with Wendy and admitted at the hearing that he would like to help the defendant if he could. Lozensky testified only that Malterre had recently told her of his alleged past sexual contact with Wendy.

■ We believe the district court properly excluded this evidence as irrelevant to the source of the three centimeter laceration on Wendy's vaginal wall. Malterre testified that all contacts he had had with Wendy were consensual; that he never hurt her. Both Dr. Keene and Dr. ten Bensel unequivocally testified that the laceration Dr. Keene observed would be very painful; that it was an indication of force.[5] Moreover, Malterre was unable to testify that his contact with Wendy occurred during the time the laceration was received.[6] Under these circumstances, we cannot say the district court abused its discretion in excluding evidence of Wendy's alleged prior sexual activities.[7]

Defendant also claims the evidence of Wendy's alleged contact with Malterre should have been admitted for "impeachment purposes," since Wendy had previously denied any contact with Malterre, and to demonstrate Wendy's capability to fabricate a story. These are not recognized exceptions under Rule 412. As we have

previously stated, the effect of Rule 412 is "to preclude the routine use of evidence of specific instances of a rape victim's prior sexual behavior." *United States v. Shaw*, 824 F.2d at 607 (citing 124 Cong.Rec. 34913 (1978) (statement of Rep. Mann)). Defendant's arguments to the contrary must be rejected.

**B. Admission of Wendy's Out-Of-Court Identification**

Defendant also challenges the district court's admission of Wendy's out-of-court statement to social worker Linda Heilman that Damian Azure was the individual who had abused her. Heilman was the government's first witness in its case-in-chief. She testified that Wendy and her sister Melissa were brought to social services personnel by their father, Daniel Lozensky, because he was concerned about their treatment. Heilman questioned Wendy about possible physical abuse; she then learned from Wendy about repeated sexual abuse. Heilman was allowed to testify, over defendant's objection, that Wendy identified Azure as the person who had sexually abused her.

In *United States v. Shaw* we observed that this Court has, on several occasions, approved the admission of testimony by an adult concerning what a child abuse victim told the adult about an abusive situation. *See* 824 F.2d at 609; *United States v. Dorian*, 803 F.2d 1439, 1443–46 (8th Cir. 1986); *United States v. Cree*, 778 F.2d 474, 476–78 (8th Cir.1985); *United States v. Renville*, 779 F.2d 430, 439–41 (8th Cir. 1985). In *Shaw*, we held that a social worker's testimony was admissible under

---

**5.** Wendy testified at trial that her contacts with Azure were painful. Dr. ten Bensel also testified that Wendy told him "that there was [pain]. Every time over the length of the time that there were these alleged sexual abuses that there was pain."

**6.** Only a vague "guess" by Melissa when social workers questioned her about the alleged contact placed one of the incidents in November, 1984.

**7.** Defendant also refers in his brief to testimony by Patty Lozensky that Wendy came home from school one day in the summer of 1984 bleeding from her vagina and admitted the injury

stemmed from an attempt to masturbate with a bottle. This testimony was not mentioned in defendant's Rule 412 motion and hence was not properly before the district court. *United States v. Shaw*, 824 F.2d 601, 603 n. 2 (8th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988); Fed.R.Evid. 412(c)(1). Even assuming it was, we find no error in the district court's exclusion of any references to the alleged incident since, as the court found, there was no showing that it could have caused the injury Dr. Keene observed in December, 1984.

the residual hearsay exception contained in Fed.R.Evid. 803(24) because it met the five requirements of the rule,[8] including the requirement that the evidence be "more probative" than the testimony offered by the victim. *Id.* at 608–10.

In reviewing defendant's initial conviction in this case, however, we had expressed doubt about the admissibility of Heilman's testimony under Rule 803(24). We directed the court to "carefully reconsider" the admissibility of Wendy's out-of-court statement, because we believed Wendy's testimony identifying Azure as the individual who had abused her would be "more probative" than Heilman's. *See* 801 F.2d at 342. On retrial, the government did not argue that Heilman's testimony was more probative than Wendy's on the issue of who had abused Wendy. Instead, the government contended the testimony was offered for a non-hearsay purpose, namely, to explain why the investigation focussed on Azure. The trial court accepted this argument and admitted the testimony, expressly cautioning the jury that Heilman's testimony "cannot be considered by the jury as proof that Damian Azure was a person who sexually abused the child."

■ The government continues to argue on appeal that the statement was properly admitted for a non-hearsay purpose, but we cannot agree. The only possible relevance of Wendy's identification of Azure and of the government's subsequent investigation of him is that he in fact was the person who abused her. Having said this, however, we must consider whether the court's admission of the identification testimony requires a reversal of the defendant's conviction. In the circumstances of this case, we find it does not.

As we have previously noted, "[t]he primary justification for the exclusion of hearsay is the lack of any opportunity for the adversary to cross-examine the absent declarant whose out-of-court statement is introduced into evidence." *United States v. Bohr*, 581 F.2d 1294, 1304 (8th Cir.), *cert. denied*, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed. 2d 351 (1978), (citations omitted). "[W]here the declarant is also a witness, the rationale of the hearsay rule does not apply." *Id.* In this case, Wendy was a witness and was subject to cross-examination by the defendant. Her statement to Heilman was corroborated by Wendy's own unimpeached testimony, by the testimony of her two sisters, and by the evidence in Dr. Keene's medical records that Wendy identified Azure as the individual who had abused her. *See United States v. Shaw*, 824 F.2d at 608; *United States v. Renville*, 779 F.2d 430, 435–39 (8th Cir.1985).

In other words, the government's case against the defendant was very strong, and Heilman's testimony was only one of several instances where Wendy identified Azure as her abuser. *See United States v. Rabbitt*, 583 F.2d 1014, 1029 (8th Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). The trial judge cautioned the jury that Wendy's out-of-court statement could not be considered as proof of Azure's guilt, and, in view of the entire record in this case, we conclude that its admission could not have had substantial influence on the outcome of the case. *See United States v. Slader*, 791 F.2d 655, 657 (8th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 464, 93 L.Ed.2d 409 (1986); *United States v. Reed*, 724 F.2d 677, 679 (8th Cir. 1984). Accordingly, we hold that any error in admitting Wendy's out-of-court statement to Heilman was harmless.

---

8. Hearsay evidence must satisfy the following five criteria to be admissible under Rule 803(24):

  (1) The statement must have circumstantial guarantees of trustworthiness equivalent to the twenty-three specified exceptions listed in Rule 803;

  (2) The statement must be offered as evidence of a material fact;

  (3) The statement must be more probative on the point for which it is offered than any

other evidence the proponent can procure through reasonable efforts;

  (4) The general purposes of the Federal Rules of Evidence and the interests of justice must best be served by admission of the statement into evidence;

  (5) The proponent of the evidence must give the adverse party the required notice. *United States v. Shaw*, 824 F.2d at 609.

### C. Admissibility of Azure's Prior Sworn Testimony

 Finally, Azure challenges the district court's admission of excerpts of his prior sworn testimony at the first trial. Azure chose not to take the stand during his second trial, and he contends the government's use of testimony from his first trial effectively negated his privilege against self-incrimination. Defendant also argues his prior sworn testimony was not proper rebuttal, and the trial court abused its discretion in allowing the government to reopen its case-in-chief. We cannot agree.

Defendant called Bill Bercier to testify in his defense at his second trial. Bercier lived with Azure and was home the evening of December 8th. He testified that he did not see or hear Wendy until 9:00 a.m. on the morning of December 9th, although he agreed Wendy asked him not to tell Azure she was leaving. After defendant rested, the government introduced testimony by Azure in which he admitted that he took Wendy home with him on the night of December 8th, while the rest of the children remained at Mary Lou Caine's house.

This was proper rebuttal testimony. "The function of rebuttal is to explain, repel, counteract or disprove evidence of the adverse party." *United States v. Luschen*, 614 F.2d 1164, 1170 (8th Cir.), *cert. denied*, 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980). Bercier's testimony implied Wendy was not home on the night of the 8th. Azure's testimony counteracted this suggestion. We find no error in the district court's admission of Azure's prior testimony in this case. *See United States v. Arthur*, 602 F.2d 660, 663 (4th Cir.), *cert. denied*, 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1979).

### III. CONCLUSION

For all of the foregoing reasons, the judgment of the district court is affirmed.