IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 20, 2009

Charles R. Fulbruge III
Clerk

————————————————————

No. 08-40190

————————————————————

UNITED STATES OF AMERICA
Plaintiff-Appellee

v.

DANIEL DAVID ALFARO
Defendant-Appellant

————————————————————

Appeal from the United States District Court
for the Southern District of Texas

————————————————————

Before SMITH, SOUTHWICK, Circuit Judges, and ENGELHARDT, District Judge.[*]

KURT D. ENGELHARDT, District Judge:

Defendant-Appellant Daniel Alfaro ("Alfaro") pleaded guilty without a plea agreement to one count of production of child pornography by use of a video cassette, knowing that such visual depiction would be transported in interstate commerce and foreign commerce, by any means including by computer in violation of 18 U.S.C. § 2251(a) and (e)

———————————

[*]     District Judge for the Eastern District of Louisiana, sitting by designation.

("Count One" or "the production count") and one count of knowingly receiving a visual

depiction, namely, a video recording of a minor engaging in sexually explicit conduct that

had been transported, mailed, and shipped in interstate and foreign commerce, by any means

including by a computer in violation of 18 U.S.C. § 2251 (a)(2) and (b)(1) ("Count Four" or

"the receipt count").[1]   Alfaro now appeals the sentence he received for Count One,

contending that the district court erred by enhancing his sentence by two levels pursuant to

§ 2G2.1(b)(5) of the United States Sentencing Guidelines (the "Guidelines")[2] because the

minor at issue was not in his custody, care, or supervisory control. We AFFIRM.

I.      BACKGROUND

On or about March 1, 2007, 36-year-old Alfaro produced videos of himself and a

15-year-old minor child (later identified as his sister-in-law) engaging in sexually explicit

conduct (including oral to genital sexual intercourse and the lascivious exhibition of the

minor's genitals). Alfaro intended to send these videos to another over the Internet.  He

created the videos with products that had traveled in interstate commerce.  Alfaro

attempted to send at least one of the videos to another over the Internet by way of email.

Alfaro was also found to be in possession of more than 70 videos containing images of

---

[1]      Daniel David Alfaro was charged by indictment with two counts of producing child pornography and one count each of sending child pornography, receiving child pornography, possessing child pornography, and providing child pornography to a minor.  However, he pleaded guilty to one count of producing and one count of receiving child pornography. The remaining counts were dismissed by the district court on the Government's motion.

[2]      All references are to the 2007 edition of the U.S. Sentencing Guidelines Manual (2007), which was used by the district court.

2

minors engaging in sexually explicit conduct, most of which he received from sources over the Internet.

When calculating the offense level for both Counts One and Four under the Guidelines, the probation officer determined that the production count resulted in the higher level. The Presentence Investigation Report ("PSR") recommended a base offense level of 32 pursuant to § 2G2.1. The probation officer recommended several enhancements, including a two-level enhancement pursuant to § 2G2.1(b)(5) based on the conclusion that the minor involved in the offense was within Alfaro's care, custody, and control (which is the sole basis for Alfaro's current appeal). Count One had a total adjusted offense level of 40, which was increased by one under the multiple count adjustment of § 3D1.4. After a three-level reduction for acceptance of responsibility, Alfaro's total offense level was 38. This, combined with a criminal history category of I, resulted in an advisory guideline range of 235-293 months in prison. The receipt count carried a statutory maximum sentence of 240 months.

Alfaro objected to several of the enhancements, including the assertion that he exercised control over the minor. The Government filed a response, noting that § 2G2.1(b)(5) was meant to apply broadly and asserting that it was reasonable to conclude that Alfaro, a 36-year-old man, acted as a caretaker to his 15-year-old sister-in-law. The Government noted that during an interview, the victim stated that Alfaro would pick up the victim at her house, would take the victim to his house, and would produce the videotapes there while the victim's sister, his wife, was away.

3

At sentencing, Alfaro argued that the victim's taped interview established that he did not exercise custody or control over the victim. He noted that the victim never stayed with him or spent the night at his home. Alfaro argued that the victim used to call him for a ride after school and pointed out that the victim's mother did not approve of the victim spending time with Alfaro. The Assistant United States Attorney ("AUSA") repeated that Alfaro was 20 years older than the victim and was a family member. The AUSA further opined that if the victim had injured herself, Alfaro would have taken her to the emergency room, would have signed the applicable forms, and would have requested for her to receive treatment. The AUSA thus contended that the victim was "under [Alfaro's] custody and care and control just as much as if he were her babysitter."

The district court overruled Alfaro's objection and sentenced Alfaro to concurrent sentences of 288 months for the production count and 240 months on the receipt count, to be followed by a life term of supervised release. Alfaro filed a timely notice of appeal.

## II. DISCUSSION

As a threshold matter, we must determine the proper standard of review, which is a point at issue in the case. Alfaro maintains that the proper standard is *de novo* review, because the case concerns the interpretation and application of the Sentencing Guidelines. The Government contends that the finding that the victim was in Alfaro's "custody, care, or supervisory control" is a factual finding reviewed under a "clearly erroneous" standard. *See United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008) (a district court's application of the sentencing guidelines is reviewed *de novo* while its

4

factual findings are reviewed for clear error), *cert. denied*, 128 S. Ct. 2452 (2008). This Court has never considered the appropriate standard of review of the application of a two-level enhancement under § 2G2.1(b)(5) in a case where a district court has found a minor victim was under the control of the defendant. However, this Court has concluded in the context of other provisions of the Guidelines that it will affirm a sentencing enhancement when a district court makes factual findings that are not clearly erroneous, and then applies the guidelines to those findings. *See United States v. Mejia-Orosco*, 867 F.2d 216, 221 (5th Cir. 1989). In this particular case, the district court made findings concerning Alfaro's relationship with the victim, such as the age difference between them, the family relationship, and the fact that he picked her up and took her to his house. The district court then applied § 2G2.1(b)(5) to those findings and concluded that the victim was in Alfaro's "custody, care, or supervisory control." We review for clear error this application of the Sentencing Guideline in question to the facts.

Having clarified the appropriate standard of review, we must now determine whether a minor victim can be in the custody, care, or supervisory control of a defendant when the victim's parent or legal guardian did not specifically entrust the victim to the defendant's care. On appeal, Alfaro argues that the district court erred in applying the two-level enhancement for his control over the victim. He maintains that the PSR and the district court relied solely on the fact that Alfaro was older than the victim and was related to the victim by marriage. He asserts that no evidence was presented to show the "actual relationship" between the two, as required by the commentary to the Guidelines.

5

Alfaro notes that the victim's mother did not approve of Alfaro and the victim spending time together and contends that, as a result, the court could not find that Alfaro was entrusted with the care of the victim.

On the other hand, the Government maintains that because the Guideline is to be broadly applied, the difference in age and the implicit trust in the family relationship are relevant to the issue of control. The Government also cites to case law concerning similar Guidelines in support of its assertion that the fact that the victim called Alfaro for rides showed that the victim placed trust in Alfaro, which it contends is sufficient for the enhancement. The Government maintains that the district court properly considered the actual relationship between Alfaro and the victim in conjunction with the family relationship.

Under § 2G2.1(b)(5), the court should apply a two-level enhancement to a defendant's sentence for producing sexually explicit visual or printed material "[i]f the defendant was a parent, relative, or legal guardian of the minor involved in the offense, or if the minor was otherwise in the custody, care, or supervisory control of the defendant." U.S.S.G. § 2G2.1 (b)(5). This enhancement "is intended to have broad application and includes offenses involving a minor entrusted to the defendant." *Id.* at comment 3(A). The commentary lists examples of individuals to whom the enhancement would apply, including teachers, babysitters, day care providers, and "temporary caretakers." *Id.* The commentary states that "the court should look to the actual relationship that existed between the defendant and the minor and not simply to the legal status of the

6

defendant-minor relationship." *Id.*

There is ample evidence that the district court properly applied the guideline in this instance in looking to the actual relationship between the victim and Alfaro. The district court noted that the commentary to the Guideline suggested that the enhancement should be applied broadly and should be considered in the context of the defendant's actual relationship to the victim "and not simply the legal status of that relationship." Concluding that although it was "questionable" whether Alfaro "was technically entrusted" with the victim's care, the district court determined that "the actual relationship between an adult male and the sister-in-law" constituted "an entrustful relationship or would fall into the category that is contemplated." The Government noted at sentencing that the victim's mother was aware that the victim went to Alfaro's house, although the victim had stated that her mother disapproved of the visits. Thus, in making its determination, the district court was presented with details that enabled it to consider the scope of the parties' arguments on the question of whether Alfaro exercised custody or control over the victim in order look to the "actual relationship." Thus, the district court did not misapply the guidelines.

Alfaro contends that the evidence presented at sentencing was insufficient to support the enhancement because there was nothing to show that the victim was in his care or control. This circuit has, thus far, never considered the propriety of an enhancement under § 2G2.1(b)(5). Other circuits have addressed this enhancement, but admittedly only in cases that have involved either (1) a closer family relationship than

7

that of a brother-in-law and a sister-in-law or (2) an express entrusting of care by the minor's custodian. *See United States v. Martin*, 2008 WL 4148529, at \*3 (6th Cir. Sept. 9, 2008) (No. 07-5159) (unpublished) (enhancement applied when minors were left by parents in the care of a photographer who was purportedly training them for modeling jobs); *United States v. Carson*, 539 F.3d 611, 612 (7th Cir. 2008) (boyfriend of noncustodial parent qualified for enhancement when minor's guardian aunt allowed the minor to visit his mother and the defendant); *United States v. Street*, 531 F.3d 703, 711 (8th Cir. 2008) (enhancement applied to individual that the victim considered as stepfather, even though the victim was a teenager who did not need caretaking, because the victim had known the defendant for some time and was left in his custody). It is true that none of the above cases evokes the relevant questions here: whether an older defendant who is related by marriage to a minor victim can exercise custody and control over the victim notwithstanding the victim's parent's disapproval of the relationship.

To address this specific issue, Alfaro contends that the difference in ages alone is insufficient to warrant the enhancement and maintains that "[t]here is nothing inherently 'entrustful' about the relationship between a brother-in-law and a sister-in-law – it is more of a peer relationship." While that may be true generally, this Court concludes that the 20-year age difference between Alfaro and his teenage minor victim, which the district court noted in its adverse ruling, mitigates against a finding that the two were "peers." While the more distant family relationship may not lend itself to a presumption of a trust relationship (as it would if the defendant was a parent or guardian), the

8

commentary to § 2G2.1 indicates that the enhancement should be applied broadly and applies to more than mere legal caretakers of a minor. Thus, the district court did not err when it concluded that the relationship between 36-year-old Alfaro and his 15-year-old sister-in-law was an entrustful relationship.[3]

As for the issue regarding the "actual relationship between Alfaro and the minor, he maintains that "[t]he record is devoid of details of [his and the victim's] 'actual relationship,'" including an absence of information on the length of time that the minor knew him. Alfaro hypothesizes that the victim may have "met him just before the events that led to the offense" and maintains that "[t]he record supports a conclusion that a fifteen-year-old pursued an unauthorized relationship with a much older man." Although the specifics of the victim's relationship with Alfaro are not detailed in the record, there is some information from which this Court could conclude that the relationship had been longstanding. The PSR, which the district court reviewed in making its determination, revealed that Alfaro had begun a common-law relationship with the victim's sister in

---

[3]  The Government notes that because the victim would call Alfaro and ask him for rides home from school, it is clear that the victim herself trusted Alfaro, even if the victim's mother did not explicitly authorize Alfaro to exercise control over her daughter. The Government claims that this is sufficient to uphold the enhancement, citing *United States v. Merritt*, 982 F.2d 305, 307 (8th Cir. 1992) and *United States v. Balfany*, 965 F.2d 575, 585 (8th Cir. 1992). However, *Merritt* and *Balfany* both dealt with an enhancement under Guideline § 2A3.1, which, at that time, specifically indicated that the enhancement should apply if the victim trusted the defendant. As Alfaro points out, Section 2G2.1, applicable here, does not contain the same commentary. This Court agrees with Alfaro that, for that reason, it is not necessarily appropriate to look to cases applying § 2A3.1(b)(3) in determining whether to apply an enhancement under § 2G2.1(b)(5). However, despite this finding, this Court determines that the district court properly considered the age difference between the victim and Alfaro and their "actual relationship" when it applied the 2-point enhancement in this instance.

9

2000. It is, thus, reasonable to conclude that the victim met Alfaro at or around that time and had known the victim for some seven years when he made the videotapes of her on or about March 1, 2007.

Thus, for the reasons stated herein, we conclude that the district court did not err when it applied the two-point enhancement in this instance.

## III.    CONCLUSION

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.